IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC LYNN STRUGGS,<br><br>        Plaintiff,<br><br>  v.<br><br>MIKE EVANS, Warden, et al.,<br><br>        Defendants.<br>_____ | No. C 08-1495 MMC (PR)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND; ADDRESSING PENDING MOTIONS; DIRECTING CLERK TO ADD R. BASSO AS A DEFENDANT ON THE COURT DOCKET**<br><br>**(Docket Nos. 6 & 7)** |

On March 18, 2008, plaintiff, a California prisoner incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. By separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis.

**DISCUSSION**

A.  Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

B.  Background

In his complaint, plaintiff makes the following allegations with respect to events that occurred at SVSP in 2006 and 2007. On June 11, 2006, plaintiff was forcibly removed from his cell after being sprayed with pepper spray by defendants Correctional Officers J. Rodriquez ("Rodriquez"), R. Reynoso, T. Woolf ("Woolf") and E. Camarena ("Camarena"). Plaintiff was taken to a holding cell but was not promptly decontaminated; the medical report was completed by defendant Lt. Sanchez ("Sanchez") approximately two and one-half hours after plaintiff was moved to the holding cell. (Compl. at 3.) Thereafter, Rodriquez and Camarena asked plaintiff to fill out a property form to send his jewelry home. Plaintiff did so, but his mother never received the jewelry. (Compl. at 3A.)

On June 15, 2006, plaintiff appeared before the classification committee ("ICC") and was told he would be held in administrative segregation for sixty days pending an investigation into plaintiff's participation in a conspiracy to introduce a controlled substance into the prison. On July 17, 2006, plaintiff received a rules violation report ("RVR") charging him with said conspiracy. Plaintiff requested a postponement of the RVR hearing pending the outcome of the referral of the charge to the District Attorney's office for prosecution. On July 22, 2006, defendant R. Basso ("Basso"), an investigative employee, arrived to interview plaintiff, but plaintiff refused, telling Basso he was still waiting for the results of the referral to the District Attorney. (Compl. at 3A page 1.)

On July 23, 2006, plaintiff filed a grievance directly to defendant Warden Evans ("Evans"), claiming correctional officers had been ordered to raid plaintiff's cell. The grievance was denied. On August 1, 2006, plaintiff filed a grievance with the prison ombudsman, defendant M. Thomas ("Thomas"), claiming excessive force had been used to remove him from his cell and that he was falsely being charged with a rules violation. Thomas interviewed plaintiff and told him that his complaint would not be addressed. (Compl. at 3A pages 1 & 2.)

On August 17, 2006, plaintiff appeared before the ICC and was released from administrative segregation back to the general population. On August 30, 2006, plaintiff

2

received a copy of the investigative report prepared by Basso; plaintiff objected to the report because he had not authorized Basso to conduct an investigation.  (Compl. at 3A page 2.)

On December 2, 2006, plaintiff attended the hearing on the RVR.  Plaintiff informed the Senior Hearing Officer defendant Lt. E. Moore ("Moore") that plaintiff would not proceed with the hearing because he objected to the use of the information in the investigative employee's report and he was still waiting for other evidence and to talk to witnesses.  When plaintiff attempted to leave the hearing, Moore told plaintiff that if plaintiff didn't sit down he'd be pepper sprayed.  At that point, plaintiff asked to return to his cell to get his legal papers.  After being granted permission to do so, plaintiff returned to his cell and refused to leave.  He was then moved to another cell.  (Compl. at 3A page 2.)

On December 7 and 11, 2006, January 25 and 31, 2007, and February 27, 2007, plaintiff filed grievances against Moore, all of which were screened out by defendant Correctional Counselor II E. Medina ("Medina").  On March 26, 2007, plaintiff filed a letter of complaint with Warden Evans, in which letter plaintiff complained about all of the matters discussed above.  On April 3, 2007, Moore placed plaintiff in administrative segregation.  Plaintiff then filed a grievance complaining he had been retaliated against by Moore; Medina screened out that grievance as well.  On November 25, 2007, plaintiff was cut on his upper back while on D-yard, where he had been sent by the ICC after he wrote his letter of complaint.  (Compl. at 3A page 3.)

C.   Plaintiff's Claims

    1.   Failure to Process Administrative Appeals and Letters of Complaint

Plaintiff alleges defendants Evans, Thomas, G. Ponder, J. Stevenson, J. Celaya and Medina failed to properly respond to and process plaintiff's administrative appeals and/or letters of complaint.  Such allegations fail to state a claim for relief.  There is no constitutional right to a prison administrative appeal or grievance system; consequently, a prison official's failure to process grievances is not actionable under § 1983.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding prisoner's claimed loss of liberty interest in processing of administrative appeals does not violate due process because prisoners lack

3

separate constitutional entitlement to specific prison grievance system).  Further, while a prisoner retains a First Amendment right to petition the government for redress of grievances as to the constitutional claim underlying an administrative grievance, he possesses no constitutional right to a response to his grievance from prison officials.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (holding prisoner's First Amendment right of access to courts is not compromised by prison's refusal to entertain grievance).  Accordingly, plaintiff's claim that his grievances and/or letters of complaint were not processed or responded to will be dismissed with prejudice.

2. False Reports, Denial of Due Process at Disciplinary Hearing and Retaliation

Plaintiff alleges defendants Rodriquez, Reynoso, Woolf, Camarena, O. Reynoso, T. Sheets ("Sheets"), and Sanchez wrote false reports about plaintiff, leading to his being charged with a rules violation.  He further alleges defendant Basso wrote a false investigative report to be used at plaintiff's disciplinary hearing.  Additionally, plaintiff alleges, defendant Moore deprived plaintiff of a properly-conducted disciplinary hearing, that defendant Celaya agreed with Moore, and that Moore retaliated against plaintiff by placing plaintiff in administrative segregation approximately one week after plaintiff wrote a letter of complaint to Warden Evans about various matters, including Moore's conduct at the disciplinary hearing.  For the following reasons, plaintiff's allegations fail to state a claim for relief.

Plaintiff's claims of false reports that led to false charges are not cognizable, as a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).  Further, while prisoners are entitled to the protections of due process at disciplinary hearings where they face placement in punitive segregation or the loss of time credits, see Wolff v. McDonnell, 418 U.S. 539, 556 (1974), here, plaintiff has alleged no facts showing he suffered any punishment as a result of the aborted hearing held by Moore.  Moreover, plaintiff's complaint is silent as to whether plaintiff ultimately received a hearing in which plaintiff participated; if plaintiff subsequently was provided another hearing, and such hearing was procedurally proper, that is all the relief

4

to which he is entitled with respect to the first, assertedly procedurally infirm, hearing. See Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991) (holding violation of procedural due process rights requires only procedural correction and not reinstatement of substantive right). Accordingly, plaintiff's claim of false reports will be dismissed with prejudice. Plaintiff will be given leave to amend to allege facts that cure the noted pleading deficiencies with respect to his claim that his disciplinary hearing violated his right to procedural due process.

As noted, plaintiff also alleges retaliation by Moore. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Prisoners may not be retaliated against for exercising their First Amendment right of access to the courts, which right extends to a prisoner's use of established prison grievance procedures. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (holding First Amendment guarantees right to seek redress of grievances from prison authorities). Thus, a prisoner may not be retaliated against for using such procedures. Id.; see Rhodes, 408 F.3d at 567 (holding that without constitutional guarantees of right to file grievances and initiate court actions, "inmates would be left with no viable mechanism to remedy prison injustices").

Here, plaintiff's allegations fail to state a cognizable claim for retaliation, for two reasons. First, plaintiff has not alleged facts showing he was using established prison grievance procedures when he sent a letter of complaint to Warden Evans; accordingly, the Court is unable to determine whether plaintiff was exercising his constitutionally protected First Amendment right of access to the courts when he sent the letter of complaint. Second, plaintiff has not alleged facts showing defendant Moore acted as a result of plaintiff's having sent the letter of complaint. A claim for retaliation is not established simply by showing

5

adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000); see also Rhodes, 408 F.3d at 567-68 (holding retaliation claim requires showing state actor took adverse action against inmate because of inmate's protected conduct). Accordingly, plaintiff will be given leave to amend to allege facts that cure the noted pleading deficiencies with respect to his claim that he was retaliated against by Moore.

### 3. Stolen Property

Plaintiff alleges that defendant Camarena stole plaintiff's personal property. Plaintiff's allegations fail to state a cognizable claim for relief as neither the negligent nor intentional deprivation of property states a claim under 42 U.S.C. § 1983 for the denial of due process if the deprivation was random and unauthorized. See Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (holding no claim under § 1983 where state employee negligently lost prisoner's property), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding no claim under § 1983 for intentional destruction of inmate's property). Accordingly, as plaintiff alleges Camarena deprived plaintiff of his property without warning or authorization, plaintiff's claim will be dismissed with prejudice.

### 4. Excessive Force, Decontamination and Inadequate Medical Care

Plaintiff alleges defendant M. Nillsson ("Nillsson") set in motion a search of plaintiff's cell that led to defendants Rodriquez, R. Reynoso, Woolf and Camarena aggressively approaching plaintiff's cell, opening the food slot, and spraying the cell with pepper spray. Plaintiff states that, as a result, his "bag of prison made wine [ ] wasted all in front of my toilet and the cell door." (Compl. at 3:14-15.) After the cell was sprayed, he was moved to a holding cell, but was not promptly decontaminated, and a medical report was not prepared for two and one-half hours. (Compl. at 3:17-20.).

Plaintiff claims the use of pepper spray constituted excessive force, and that Nillsson, who ordered the cell search, was responsible for the use of force, as was Woolf, who participated in removing plaintiff from his cell. (Compl. at "Continuation" of 3A page 3.)

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7.

Plaintiff's allegations do not suffice to state a cognizable claim for relief against Nillsson, as plaintiff has not alleged facts that show Nillsson either ordered the use of pepper spray or did so without regard to whether such use was necessary, or that Nillsson failed to intervene to protect plaintiff from the use of pepper spray. Further, plaintiff's allegations do not state a cognizable claim for relief against Woolf, as plaintiff has not described what injury plaintiff suffered, if any, from the use of pepper spray. While a prisoner need not allege that he suffered serious injury in order to establish an Eighth Amendment violation, the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. Id. at 7, 9-10. Here, plaintiff has alleged no facts that enable the Court to discern whether he has suffered an injury rising to the level of a constitutional violation. Accordingly, plaintiff will be given leave to amend to allege facts that cure the noted pleading deficiencies.

Plaintiff further alleges that after he was removed from his cell defendants Rodriquez, R. Reynoso, Woolf and Camarena failed to promptly decontaminate him and defendant Sanchez provided inadequate medical care. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an

7

examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.  Plaintiff's allegations fail to state a claim for deliberate indifference to his serious medical needs.  First, plaintiff has not alleged the type of injury he suffered from the use of pepper spray and from a failure to be promptly decontaminated; consequently, the Court cannot discern whether he suffered from a serious medical need.  Second, plaintiff has not described what care he requested from defendants and the response to his request; consequently, the Court cannot discern whether defendants acted with the requisite state of mind to establish deliberate indifference.  Plaintiff will be give leave to amend to allege facts to cure the noted pleading deficiencies.

D.     Pending Motions

Plaintiff has filed a motion to correct the court docket to add Basso as a defendant, noting that Basso is listed as a defendant in the caption of the complaint, but is not listed on the court docket.  The motion will be granted and the Clerk will be directed to add Basso as a defendant on the court's docket.

Plaintiff also has filed a "Motion to Submit Constitutional Violations," in which he states he is of the belief that he must submit a separate list of the alleged constitutional violations committed by defendants.  Included with plaintiff's motion is a list of such violations.  Plaintiff's motion will be denied as moot, as plaintiff may include his list of constitutional violations in his amended complaint.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. Plaintiff's motion to correct the court docket to add R. Basso as a defendant is hereby GRANTED.  (Docket No. 6.)  The Clerk is DIRECTED to add R. Basso as a defendant on the docket.

2. Plaintiff's motion to submit a separate list of constitutional violations is hereby DENIED as moot.  (Docket No. 7.)

3. Plaintiff's claims of failure to process administrative appeals and letters of

8

1 complaint, false reports, and stolen property are hereby DISMISSED with prejudice.

2   4. Plaintiff's claims of denial of due process at his disciplinary hearing, retaliation, excessive force, and inadequate medical care are hereby DISMISSED with leave to amend. Within **thirty (30)** days of the date this Order is filed, plaintiff may file an AMENDED COMPLAINT, **using the court's form civil rights complaint**, a copy of which is provided herewith, in order to cure the deficiencies noted above. Plaintiff shall complete the form, and include in the caption both the case number of this action, No. C 08-1495 MMC (PR), and the phrase "AMENDED COMPLAINT."

  An amended complaint supersedes the initial complaint and may not incorporate by reference any parts of the original complaint. London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981). Defendants not named in an amended complaint are no longer defendants. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.1992). The above-described rules govern actions filed by pro se litigants as well as litigants represented by counsel. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Accordingly, if plaintiff wishes to amend his complaint to cure the pleading deficiencies noted above, he must file an amended complaint that includes any claims from the complaint he wishes to preserve. Plaintiff should not include in his amended complaint the claims the Court has dismissed from this action with prejudice.

  **If plaintiff fails to timely file an amended complaint in conformity with this order, the action will be dismissed without prejudice.**

  5. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action, pursuant to Federal Rule of Civil Procedure 41(b), for failure to prosecute.

  This order terminates Docket Nos. 6 and 7.

  IT IS SO ORDERED.

DATED: October 21, 2008

          *Maxine M. Chesney*
          MAXINE M. CHESNEY
          United States District Judge