IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CEDRIC LYNN STRUGGS, | ) | No. C 08-1495 MMC (PR) |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| MIKE EVANS, Warden, et al., | ) | **(Docket No. 70)** |
| Defendants. | ) ) | |
| _____ | ) | |

On March 18, 2008, plaintiff, a California prisoner incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. Thereafter, the Court granted defendants' motion to dismiss plaintiff's first amended complaint ("FAC"), on the ground plaintiff had failed to properly join claims and defendants under Rules 18(a) and 20(a) of the Federal Rules of Civil Procedure. By that same order, the Court granted plaintiff leave to file a second amended complaint to cure the noted pleading deficiencies.

Plaintiff then sought to file two amended complaints, each titled "Second Amended Complaint." The first was received on October 5, 2010, and the second on October 6, 2010. In its order of April 28, 2011 (Docket No. 59), the Court screened the complaints and determined the October 5, 2010 Second Amended Complaint ("SAC") was the operative

complaint on which the action would proceed.[1] In that regard the Court found plaintiff's allegations stated, as against defendants E. Moore ("Moore), R. Basso ("Basso"), and G. Ponder ("Ponder"), cognizable claims for retaliation and for violation of due process. Further, the Court directed defendants to either file a motion for summary judgment or inform the Court they were of the opinion the case could not be resolved by summary judgment.

Now before the Court is defendants' motion for summary judgment.[2] Plaintiff has not filed an opposition or otherwise responded to defendants' motion.[3]

## FACTUAL BACKGROUND[4]

In 2006 and 2007, plaintiff was a prisoner housed at SVSP and defendants were correctional officers at SVSP. (SAC at 3, 15, 18, 21.)

Plaintiff was charged with a rules violation after a controlled substance was discovered during a search of his cell on June 11, 2006. (FAC at 4-5, 26, 38.) Department of Justice criminal laboratory results showed the substance discovered in plaintiff's cell contained cocaine base. (Decl. Moore Supp. Mot. Summ. J. ("Moore Decl.") ¶ 3; FAC at 98-99.) Defendant Moore was appointed as the Senior Hearing Officer to review plaintiff's CDC-115 Rule Violation Report ("RVR"). (Moore Decl. ¶ 2.)

On July 19, 2006, plaintiff received a copy of his RVR, including the laboratory results. (FAC at 27; Moore Decl. ¶ 3.) That same day, plaintiff requested the disciplinary

---

[1] The Court directed the Clerk to file the October 6, 2010 complaint as a new and separate action.

[2] In conjunction with their motion, defendants have filed a Request for Judicial Notice. No opposition thereto having been filed, and good cause appearing, the request is hereby GRANTED.

[3] In its order of April 28, 2011 the Court explained to plaintiff what he must do to oppose a motion for summary judgment filed by defendants. According to the briefing schedule set forth in that order, plaintiff's opposition to the summary judgment motion was due no later than thirty days after defendants filed their motion. Defendants filed their motion on August 10, 2011, and, consequently, plaintiff's deadline to file an opposition was September 9, 2011.

[4] The following facts, unless otherwise noted, are undisputed.

1  hearing on his RVR be postponed pending referral of the case to the Monterey County
2  District Attorney for felony prosecution.  (FAC at 27; Moore Decl. ¶ 3.)  On his RVR,
3  plaintiff had the opportunity to request witnesses at his hearing but did not do so.  (FAC at
4  27.)  Plaintiff did, however, request an Investigative Employee.  (Id.)  Within the RVR
5  process, the Investigative Employee works with the Senior Hearing Officer and gathers
6  information not already available in existing RVR documents.  (Decl. Basso Supp. Mot.
7  Summ. J.  ("Basso Decl.") ¶ 3.)[5]

8  On July 22, 2006, defendant Basso was assigned as the Investigative Employee to
9  gather information for plaintiff's disciplinary hearing.  (FAC at 66-67; Basso Decl. ¶ 2.)
10 That same day, Basso approached plaintiff to conduct an interview.  (FAC at 66-67; Basso
11 Decl. ¶ 5.)  When approached, plaintiff stated, "I have no statement.  I have postponed the
12 hearing."  (Id.)

13 The postponement of a disciplinary hearing does not, without more, preclude or
14 otherwise serve to delay an Investigative Employee from completing his assigned duties.
15 (Moore Decl. ¶ 6.)  A referral to the local district attorney only delays the RVR hearing, not
16 the investigation preliminary to such hearing.  (Id.)  Prior to his attempt to interview plaintiff
17 on July 22, 2006, Basso was not aware plaintiff had postponed his hearing.  (Basso Decl. ¶
18 6.)

19 In the following days, Basso interviewed all staff and inmate witnesses involved in the
20 search of plaintiff's cell and resultant discovery of the controlled substance.  (Id. at ¶ 7.)
21 Basso then prepared an Investigative Employee Report, which he delivered to Moore.  (Id. at
22 ¶ 8.)  Moore had no questions for Basso and directed no further investigative actions.  (Id.)

23 On November 3, 2006, the Monterey County District Attorney declined to prosecute
24 plaintiff for possession of a controlled substance.  (FAC at 64.)

25 On December 2, 2006, Moore conducted plaintiff's disciplinary hearing.  (Moore
26 Decl. ¶ 7; FAC at 92.)  Plaintiff was given prior notice of the hearing and prior notice of all

---

[5] See also 15 C.C.R. 3318(a).

3

1 documents that would be used at the hearing. (Moore Decl. ¶ 7)

2 At the hearing, plaintiff stated he was dissatisfied with the Investigative Employee
3 Report and that he was not prepared to complete the hearing. (Moore Decl. ¶ 7; FAC at 92.)
4 Plaintiff stated he wanted to question staff witnesses but had not been prepared when the
5 Investigative Employee had come to interview him. (Id.) In response, Moore explained that
6 plaintiff should have been prepared when the Investigative Employee approached him. (Id.)
7 Plaintiff then because agitated and attempted to leave the hearing but was ordered to stop.
8 (Id.)[6]

9 Moore then offered to postpone the hearing if plaintiff had relevant questions prepared
10 for the Investigative Employee. (Moore Decl. ¶ 8; FAC at 92.) Plaintiff asked to return to
11 his cell to retrieve his questions. (Id.) After officers escorted plaintiff to his cell, plaintiff
12 entered and refused to return to the hearing. (Id.) As a result, a plea of "Not Guilty" was
13 entered on plaintiff's behalf, and the hearing was completed in his absence. (Id.)

14 Based on the staff witness statements and the laboratory reports confirming cocaine
15 base in the substance retrieved from plaintiff's cell, Moore found plaintiff guilty of
16 possession of a controlled substance. (Moore Decl. ¶ 9; FAC at 93.) Moore assessed
17 plaintiff 150 days credit forfeiture, thirty days loss of certain privileges, and mandatory
18 random drug testing for twelve months. (Moore Decl. ¶ 9; FAC at 94-95.)

19 As noted, plaintiff did not accept Moore's offer to postpone the hearing, nor did he
20 avail himself of the opportunity to further prepare for the hearing. (Moore Decl. ¶¶ 8, 10.)
21 During the portion of the hearing he attended, plaintiff never addressed the witness
22 statements. (Id. ¶ 10.) During the portion of the hearing he attended, plaintiff never raised
23 any concerns about the laboratory testing. (Id.) At no time prior to or during the hearing did
24 plaintiff request any witnesses or evidence be produced for the hearing. (Id.)

25 More than three months later, on March 27, 2007, plaintiff filed staff complaints

---

28 [6] Plaintiff alleges correctional officers threatened to use pepper spray on him when he tried to leave the hearing. (SAC at 7.)

4

against several correctional officers, alleging staff misconduct in connection with the RVR and disciplinary hearing. (Moore Decl. ¶ 11; FAC at 115-16.) Under SVSP policy, an inmate who submits a staff complaint is placed in the Administrative Segregation Unit pending completion of an investigation of the complaint. (Moore Decl. ¶ 11; FAC at 140-41.) Consequently, on April 3, 2007, Moore ordered plaintiff transferred from his housing in Facility C into administrative segregation. (Moore. Decl. ¶ 11; FAC at 123.)[7] Moore provided plaintiff with notice of the transfer. (Id.) Plaintiff claims the transfer was done in retaliation for his staff complaints concerning the disciplinary hearing. (SAC at 16-17.) Moore attests that the reasons for the transfer were unrelated to the hearing and that plaintiff's continued presence at Facility C posed a safety risk. (Moore Decl. ¶ 11.)

On April 12, 2007, plaintiff appeared before SVSP's Institution Classification Committee ("ICC") for his initial administrative segregation review. (FAC at 127-28.) Defendant Ponder held the review. (Id.) The ICC released plaintiff from administrative segregation to Facility D, noting "Safety concerns are central to facility C." (Id.) Plaintiff acknowledged his understanding and agreement with the ICC's action. (Id.)

Moore was not a member of the ICC that elected to move plaintiff to Facility D. (Moore Decl. ¶ 13.) Moore took no part in the decision. (Id.)

Plaintiff alleges Ponder was "responsible for his officers on C-yard from 2005-2007 in this incident" and "not once did he correct any errors made by his staff." (SAC at 19.)

**DISCUSSION**

A. Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

---

[7] Plaintiff states he and his cellmate had been housed together at Facility C "for years." (SAC at 15.)

1 dispute as to a material fact is genuine if the evidence is such that a reasonable jury could
2 return a verdict for the nonmoving party. See id.

3       The court will grant summary judgment "against a party who fails to make a showing
4 sufficient to establish the existence of an element essential to that party's case, and on which
5 that party will bear the burden of proof at trial[,] . . . since a complete failure of proof
6 concerning an essential element of the nonmoving party's case necessarily renders all other
7 facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving
8 party bears the initial burden of identifying those portions of the record that demonstrate the
9 absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving
10 party to "go beyond the pleadings, and by [his] own affidavits, or by the 'depositions,
11 answers to interrogatories, and admissions on file,' designate 'specific facts showing that
12 there is a genuine issue for trial.'" See id at 324 (citing Fed. R. Civ. P. 56(e) (amended
13 2010)).

14       For purposes of summary judgment, the court must view the evidence in the light most
15 favorable to the nonmoving party; if the evidence produced by the moving party conflicts
16 with evidence produced by the nonmoving party, the court must assume the truth of the
17 evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158
18 (9th Cir. 1999). The court's function on a summary judgment motion is not to make
19 credibility determinations or weigh conflicting evidence with respect to a disputed material
20 fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
21 1987).

22       A district court may not grant a motion for summary judgment solely because the
23 opposing party has failed to file an opposition. Cristobal v. Siegel, 26 F.3d 1488, 1494-95 &
24 n.4 (9th Cir. 1994). The court may, however, grant an unopposed motion for summary
25 judgment if the movant's papers are themselves sufficient to support the motion and do not
26 on their face reveal a genuine issue of material fact. See United States v. Real Property at
27 Incline Village, 47 F.3d 1511, 1519-20 (9th Cir. 1995) (holding local rule cannot mandate
28 automatic entry of judgment for moving party without consideration of whether motion and

supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. Degen v. United States, 517 U.S. 820 (1996).

B.  Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law committed a violation of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show the defendant proximately caused the deprivation of a federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of § 1983 if he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." Leer, 844 F.2d at 633 (alteration, internal quotation, and citation omitted) (emphasis in original). Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" acts constituting a deprivation of protected rights. Leer, 844 F.2d at 634.

1.  Retaliation

Plaintiff claims defendants retaliated against him, in violation of the First Amendment.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Liberally construed, the SAC contains three claims of retaliation. First, plaintiff claims defendant Basso prematurely prepared the Investigative Employee Report in

1  retaliation for plaintiff's postponing the hearing. (SAC at 2-3.) Second, plaintiff claims
2  defendant Moore placed plaintiff in administrative segregation in retaliation for plaintiff's
3  staff complaints. (SAC 16-18.) Third, plaintiff claims defendant Ponder reviewed and
4  approved Moore's purported transfer orders, also in retaliation for plaintiff's staff
5  complaints. (SAC at 20-21.) The Court addresses each such claim in turn.

       a. Basso's Investigative Employee Report

7    Defendants have produced evidence sufficient to show Basso did not prepare the
8  Investigative Employee Report in retaliation for plaintiff's postponement of his disciplinary
9  hearing. At the outset, defendants have shown Basso's action was not "adverse" to plaintiff.
10 Rhodes, 408 F.3d at 567. Plaintiff specifically requested an Investigative Employee. (FAC
11 at 27.) The duties of an Investigative Employee are set out in the California Code of
12 Regulations. See 15 C.C.R. § 3318. These duties include recording witness testimony and
13 reporting back to the Senior Hearing Officer, see 15 C.C.R. § 3318(a), which is precisely
14 what Basso did (Basso Decl. ¶¶ 7-8). As noted, an inmate's postponement of his RVR
15 hearing does not preclude an Investigative Employee from completing his duties. (Moore
16 Decl. ¶ 6), and, tellingly, plaintiff does not show how the report would have impacted him
17 differently had it been prepared at a later date. In sum, plaintiff fails to raise a triable issue
18 on the essential element of adversity.

19   Next, defendants have shown Basso did not prepare the report "because of" plaintiff's
20 request to postpone his hearing. Rhodes, 408 F.3d at 567. Basso was prepared to commence
21 his investigation on July 22, 2006. (Basso Decl. ¶ 5.) It is undisputed that when Basso
22 approached plaintiff to conduct an interview on that date, Basso was unaware plaintiff had
23 elected to postpone his hearing. (Id.) Plaintiff thus fails to present evidence of a causal
24 connection between the postponement of his hearing and the manner in which Basso
25 conducted the investigation.

26   Finally, defendants have shown the prompt timing of Basso's investigation
27 "reasonably advance[d] a legitimate correctional goal." Rhodes, 408 F.3d at 568.
28 Specifically, the conducting of the interviews at a time when the event was still fresh in the

8

witnesses' memories served to ensure a greater degree of accuracy with respect to the information contained in the investigative report ultimately to be used at plaintiff's hearing. (Moore Decl. ¶¶ 6, 9; Basso Decl. ¶¶ 7, 8.) As to this element, plaintiff, again, fails to present evidence to raise a triable issue.

Based on the above, the Court concludes the record has been adequately developed, and there is no evidence from which a reasonable trier of fact could conclude Basso retaliated against plaintiff. Accordingly, summary judgment will be granted in favor of Basso on plaintiff's retaliation claim.

### b. Moore's Transfer of Plaintiff to Administrative Segregation

Defendants have produced evidence sufficient to show Moore did not transfer plaintiff to administrative segregation in retaliation for plaintiff's staff complaints. Specifically, the transfer "reasonably advance[d]" at least two "legitimate correctional goal[s]." Rhodes, 408 F.3d at 568. First, separating a prisoner from the officers he identifies in a staff complaint promotes the safety of the institution (Moore Decl. ¶ 11), given the higher risk of violent or threatening interactions precipitated by such a complaint. Second, separating the prisoner from such officers preserves the integrity of the investigation into the staff complaint. (Id. ¶ 12), given that an inmate may feel intimidated by a staff member who is the subject of his complaint, and particularly, where he has continued interaction with such staff member. Plaintiff fails to present evidence to counter defendants' showing that his transfer reasonably advanced a legitimate penological goal, and, consequently, plaintiff again fails to raise a triable issue as to an essential element of his retaliation claim.

Further, to the extent plaintiff bases this claim on his transfer to Facility D, the claim likewise fails. Defendants have produced undisputed evidence that Moore took no part in the decision to transfer plaintiff to Facility D. (Moore Decl. ¶¶ 13, 14.)

Based on the above, the Court concludes the record has been adequately developed, and there is no evidence from which a reasonable trier of fact could conclude Moore retaliated against plaintiff. Accordingly, summary judgment will be granted in favor of Moore on plaintiff's retaliation claim.

9

### c. Ponder's Approval of Moore's Orders

Plaintiff alleges Ponder was "responsible for his officers on C-yard . . . in this incident" and "not once did he correct any errors made by his staff." (SAC at 19.) The Court understands plaintiff to be making a claim against Ponder in his supervisory capacity.

A supervisor may be liable under section 1983 upon a showing of (1) "personal involvement in the constitutional deprivation" or (2) "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations omitted). A supervisor cannot be liable based merely on "knowledge and acquiescence" in a subordinate's unconstitutional conduct. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 1948.

Plaintiff's claim fails at the outset because, as discussed above, the record contains no evidence sufficient to raise a triable issue as to whether plaintiff suffered any constitutional deprivation. Thus Ponder cannot be liable for failing to "correct" such a deprivation.

Further, plaintiff has failed to come forward with specific facts to show Ponder's involvement in the alleged deprivation. The conclusory allegations in plaintiff's complaint are not sufficient to show Ponder participated through "his own individual actions" in the alleged deprivation of plaintiff's rights. See Iqbal, 129 S. Ct. at 1948.[8] In particular, plaintiff fails to produce evidence showing Ponder personally retaliated against plaintiff or that Ponder ever issued an order, directive, or policy under which other officers were allowed to retaliate against plaintiff.

To the extent this claim is based on Ponder's decision to transfer plaintiff to Facility D rather than return him to Facility C, the claim likewise fails. As discussed above, there were legitimate penological reasons for separating plaintiff from the officers in Facility C pending

---

[8] Even assuming the allegations in the SAC are sufficient to raise a triable issue, which they are not, they cannot be used here because the SAC is unverified, and, consequently, cannot be considered as evidence. Cf. Schroeder v. McDonald, 55 F.3d 454, 460 & nn. 10-11 (9th Cir. 1995).

the investigation into plaintiff's staff complaint.

Because plaintiff has failed to show Ponder "caused" the alleged deprivation of plaintiff's constitutional rights, see Leer, 844 F.2d at 634, summary judgment will be granted in favor of Ponder on plaintiff's retaliation claim.

2. Due Process Violation

Plaintiff claims defendant Moore violated plaintiff's due process rights at his disciplinary hearing, in violation of the Fourteenth Amendment. Specifically, plaintiff alleges Moore denied him due process by: (1) refusing to grant a new hearing after plaintiff challenged Basso's report; (2) denying plaintiff the right to have witnesses at the hearing; (3) denying plaintiff the right to review "photo evidence"; (4) proceeding with the hearing after plaintiff challenged the testimony of staff witnesses; and (5) relying on inaccurate lab tests. (SAC at 9.)

Where, as here, a prisoner has been deprived of a significant number of good time credits, his right to due process is implicated. See generally Sandin v. Conner, 515 U.S. 472, 477-78 (1995). Due process requires the prisoner be afforded the procedural protections mandated by Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Wolff established five procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. at 564-65 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved" or where "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate

comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a sufficiently competent inmate designated by the staff." Id. at 570.

Here, the evidence submitted by defendants establishes plaintiff was afforded his due process rights. First, Moore provided plaintiff with written notice of the charges. (Moore Decl. ¶ 3; FAC at 26-27.) Specifically, on July 19, 2006, plaintiff was issued the RVR for "Possession of a Controlled Substance" including criminal lab results. (Id.) Plaintiff signed the RVR document the same day. (Id.)

Second, after his receipt of the RVR on July 19, 2006, plaintiff was afforded close to five months in which to prepare for the hearing, which took place on December 2, 2006. (Moore Decl. ¶ 7.) Such time to prepare far exceeds the twenty-four hour minimum required by Wolff.

Third, plaintiff received a written statement, prepared by Moore, of the evidence on which the prison authorities relied and the reasons for the disciplinary action. (FAC at 93-95.)

Fourth, plaintiff was given the opportunity to call witnesses and present documentary evidence in his defense. Plaintiff never requested, before or during the disciplinary hearing, that any witnesses or evidence be produced. (FAC at 27, Moore Decl. ¶ 5.) When, at the hearing, plaintiff expressed a desire to interview staff witnesses, Moore offered to postpone the hearing if plaintiff had relevant questions. (Moore Decl. ¶¶ 7, 8.) Rather than accepting Moore's offer, plaintiff asked to be taken to his cell to retrieve the questions he claimed to have prepared. (Id.) Plaintiff then refused to return to the hearing, and it appears he never produced such questions. (Id.) These undisputed facts show plaintiff had ample opportunity to present witnesses and evidence in his defense.

Regarding the fifth factor, plaintiff makes no showing that the issue was of such

12

complexity that he was unable to prepare for the hearing without inmate or staff assistance.[9] Further, the undisputed record shows plaintiff did not request an assistant despite the opportunity to request one on his RVR. (FAC at 27.) Plaintiff did request an Investigative Employee and was provided one. (Id.; Moore Decl. ¶ 4.) Indeed, Moore offered to postpone plaintiff's hearing in an effort to address plaintiff's complaints as to the investigation, and plaintiff did not accept the offer. (Moore Decl. ¶¶ 8, 10.)

In short, defendants have submitted sufficient evidence to support a finding that no due process violation was committed by Moore, and plaintiff has failed to come forward with any evidence to refute defendants' evidence.

Based on the above, the Court concludes the record has been adequately developed, and defendants have established plaintiff received a procedurally proper hearing. Accordingly, summary judgment will be granted in favor of Moore on plaintiff's due process claim.[10]

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendants' Motion for Summary Judgment is hereby GRANTED.

2. The Clerk shall enter judgment in favor of all defendants and close the file.

This order terminates Docket Nos. 70 and 73.

IT IS SO ORDERED.

DATED: September 30, 2011

MAXINE M. CHESNEY
United States District Judge

---

[9] Nor does plaintiff assert, let alone show, he was entitled to assistance under Wolff's "illiterate inmate" provision, and, indeed, the record of plaintiff's pro se filings in this action indicates plaintiff's literacy.

[10] In light of the above findings, the Court does not address herein defendants' alternative arguments that they are entitled to qualified immunity or that plaintiff's due process claim is subject to dismissal pursuant to Heck v. Humphrey, 512 U.S. 477, 487-89 (1994).